Ethan P. Davis (SBN 294683)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Ph.: (415) 318-1228
Fax: (415) 318-1300
edavis@kslaw.com

Alexander Kazam (*pro hac pending*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
akazam@kslaw.com

Nicole Bronnimann (*pro hac pending*)
KING & SPALDING LLP
1100 Louisiana St., Suite 4100
Houston, TX 77002
nbronnimann@kslaw.com

David J. Hacker (SBN CA 249272)
Jeffrey C. Mateer (*pro hac pending*)
Justin E. Butterfield (*pro hac pending*)
Lea E. Patterson(*pro hac pending*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Ph.: (972) 941-4444
Fax: (972) 941-4457
jmateer@firstliberty.org
dhacker@firstliberty.org
jbutterfield@firstliberty.org
lepatterson@firstliberty.org

*COUNSEL FOR PLAINTIFFS*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| JOHN and BREANNA WOOLARD, on their own behalf and on behalf of their minor children A.W., E.W., and O.W.; HECTOR and DIANA GONZALES, on their own behalf and on behalf of their minor children C.W.1 and C.W.2; CARRIE DODSON, on her own behalf and on behalf of her minor child C.D., | Case No. **COMPLAINT** **JURY DEMAND** |

1

                Plaintiffs,

2

        v.

3

TONY THURMOND, in his official
4   capacity as Superintendent of Public
    Instruction; MICHAEL COLEMAN, in his
5   official capacity as Superintendent of
    Maricopa Unified School District;
6   KRISTIN BLANCO, BARRY
    LINDAMAN, BREANN MORSE, TED
7   DESTRAMPE, and RENE ADAMO, in
    their official capacities as board members
8   of the Maricopa Unified School District;
    MELISSA BASSANELLI in her official
9   capacity as Superintendent of San Juan
    Unified School District; ZIMA
10  CREASON, PAM COSTA, SAUL
    HERNANDEZ, BEN AVEY, PAULA
11  VILLESCAZ, and TANYA KRAVCHUK,
    in their official capacities as board
12  members of San Juan Unified School
    District; BLUE RIDGE ACADEMY;
13  SAMANTHA HAYNES in her official
    capacity as Executive Director and
14  Principal of Blue Ridge Academy; LISA
    SOPHOS, in her official capacity as
15  Assistant Director of Curriculum &
    Instruction at Blue Ridge Academy;
16  JESSIE MARON, in her official capacity
    as President of the Blue Ridge Academy
17  Board of Directors; VISIONS IN
    EDUCATION; BRIAN ALBRIGHT in his
18  official capacity as Principal–Home
    School Academy of Visions in Education;
19  STEVE OLMOS in his official capacity as
    Superintendent and Executive Director of
20  Visions in Education; JENNIFER
    MORRISON in her official capacity as
21  Director of Instruction for Home School at
    Visions in Education; MICAH STUDER
22  in his official capacity as Chief Academic
    Officer at Visions in Education; MARK
23  HOLMAN, in his official capacity as
    Chairperson of the Visions in Education
24  Board of Directors,

25              Defendants.

26

27

28

                              2

COMPLAINT

Plaintiffs bring this federal civil rights action to vindicate the rights guaranteed to them by the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs allege as follows:

## INTRODUCTION

1.     This lawsuit challenges unconstitutional discrimination against religious families in publicly funded homeschooling programs in the State of California.

2.     The State of California authorizes the creation of tuition-free charter schools under the jurisdiction of local school districts. Some of these charter schools, including "Blue Ridge Academy" in southern California and "Visions in Education" in northern California, offer what are known as "independent study" programs that families may elect to use for their children as an alternative to traditional classroom-based instruction.

3.     In these programs, parents—rather than school employees—are empowered to make their own private, independent decisions about how best to educate their children, as long as certain statewide educational standards are met. Parents homeschool their children and receive access to public funds to purchase curricula and other instructional and enrichment materials of their choice. School employees provide limited oversight to ensure that students are satisfying minimum statewide educational standards.

4.     The plaintiffs in this case—parents John and Breanna Woolard, Hector and Diana Gonzales, and Carrie Dodson—are devout Christians who are raising school-age children in California. Plaintiffs' Christian faith is central to their identity and worldview; and instilling that faith in their children, including through their education, is of the highest importance to them.

5.     The Woolard and Gonzales families enrolled their children in Blue Ridge Academy, and Ms. Dodson enrolled her child in Visions in Education. These schools tout their commitment to providing an individualized and inclusive learning

COMPLAINT

experience that serves all families, and they make funds available to parents to choose a wide range of curricula and other educational products and enrichment activities.

6.      But there is a glaring exception to this state-supported model of inclusive, individualized education. These schools discriminate against parents who seek to educate their children in accordance with their faith, even if that faith-based education fully satisfies state educational standards. In particular, these schools have restricted parents' use of funds to purchase curricula and other instructional materials on the basis of religion and refused to accept or award credit for student work samples that derive from faith-based curricula or reflect religious perspectives.

7.      When Plaintiffs objected to this denial of equal treatment for faith-based education, school officials cited California laws that prohibit the teaching of "sectarian or denominational doctrine" in California public schools, Cal. Const. art. IX, § 8, and require charter schools to be "nonsectarian" in their programming, Cal. Educ. Code § 47605.6(e).

8.      But the United States Constitution is "the supreme Law of the Land," irrespective of "any [t]hing in the Constitution or Laws of any State." U.S. Const. art. VI, cl. 2. State law cannot be used to deprive citizens of the fundamental rights secured to every American by the federal Constitution. *See* 42 U.S.C. § 1983.

9.      Defendants' application of state law to exclude faith-based homeschooling from an otherwise generally available public benefit for homeschooling violates well-established principles prohibiting discrimination against religious viewpoints under the Free Exercise and Free Speech Clauses of the First Amendment. U.S. Const. amend. I.

10.     For these reasons, and as further explained below, this Court should enjoin Defendants from enforcing California law in a manner that violates Plaintiffs' First Amendment rights and grant Plaintiffs other appropriate relief.

COMPLAINT

1

## **JURISDICTION AND VENUE**

2       11.     This action arises under the United States Constitution and federal law,

3   specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments. This Court

4   has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5       12.     An actual controversy exists between the parties within the meaning of

6   28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief,

7   and other appropriate relief pursuant to 28 U.S.C. §§ 2201–02 and 28 U.S.C. § 1343.

8       13.     This Court has jurisdiction to award reasonable costs and attorneys'

9   fees under 42 U.S.C. § 1988.

10      14.     Venue is proper in the United States District Court for the Eastern

11  District of California under 28 U.S.C. § 1391(b)(1), because all Defendants reside

12  in California and Defendants Tony Thurmond, Melissa Bassanelli, Visions in

13  Education, Brian Albright, Steve Olmos, Jennifer Morrison, Micah Studer, and Mark

14  Holman reside in the Eastern District of California.

15      15.     Venue also lies in this district because a substantial part of the events

16  or omissions giving rise to the claim occurred in this district. *See* 28 U.S.C.

17  § 1391(b)(2).

18

## **THE PARTIES**

19      16.     Plaintiffs John and Breanna Woolard are a married couple who reside

20  in Santa Fe Springs, California. The Woolards have five children, three of whom are

21  school-aged. Their daughter A.W. is currently enrolled at Blue Ridge Academy.

22  Their sons E.W. and O.W. were enrolled until recently, and O.W. would return to

23  Blue Ridge Academy if the Academy ceased engaging in the religious

24  discrimination challenged in this lawsuit. The Woolards are suing in their own right

25  and on behalf of their minor children.

26      17.     Plaintiffs Hector and Diana Gonzales are a married couple who reside

27  in Norwalk, California. They are the legal guardians of two school-aged

28

5

1  grandchildren, C.W.1 and C.W.2, who are also enrolled with Blue Ridge Academy.

2  The Gonzaleses are suing in their own right and on behalf of their minor children.

3       18.    Plaintiff Carrie Dodson is a widowed parent who resides in Rancho

4  Murieta, California, with her son, C.D. Carrie and her son participated in the

5  homeschooling program offered by Visions in Education for several years, starting

6  when C.D. was in the second grade, until this year when C.D. was expelled for using

7  a religious curriculum. Ms. Dodson is suing in her own right and on behalf of her

8  minor child.

9       19.    Defendant Tony Thurmond is the State Superintendent of Public

10  Instruction and is sued in his official capacity only. Thurmond, as head of the

11  California Department of Education, is responsible for enforcing California's

12  education laws and regulations.

13       20.    Defendants Kristin Blanco, Barry Lindaman, Breann Morse, Ted

14  Destrampe, and Rene Adamo are school board members of Maricopa Unified School

15  District ("MUSD"), the school district where Blue Ridge Academy is located.

16  Because MUSD is a "local educational agency" under California law, *see* Cal. Educ.

17  Code § 56026.3, MUSD has "the primary responsibility to ensure compliance with

18  applicable state and federal laws and regulations," Cal. Code Regs. tit. 5, § 4620.

19  The defendant school board members are sued in their official capacities only.

20       21.    Defendant Michael Coleman is Superintendent of MUSD and is sued

21  in his official capacity only.

22       22.    Defendants Zima Creason, Pam Costa, Saul Hernandez, Ben Avey,

23  Paula Villescaz, and Tanya Kravchuk are school board members of San Juan Unified

24  School District ("SJUSD"), the school district where Visions in Education is located.

25  Because SJUSD is a "local educational agency" under California law, *see* Cal. Educ.

26  Code § 56026.3, SJUSD has "the primary responsibility to ensure compliance with

27  applicable state and federal laws and regulations," Cal. Code Regs. tit. 5, § 4620.

28  The defendant school board members are sued in their official capacities only.

COMPLAINT

23.     Defendant Melissa Bassanelli is Superintendent of SJUSD and is sued in her official capacity only.

24.     Defendant Blue Ridge Academy ("Blue Ridge") is a charter school in MUSD that offers an independent study model through which parents can access funds to purchase the curricula of their choice and then homeschool their children, with limited oversight by Blue Ridge employees. Families in Los Angeles, Ventura, and Kern Counties are eligible to enroll in Blue Ridge.

25.     Defendant Samantha Haynes is Executive Director and Principal of Blue Ridge Academy and is sued in her official capacity only.

26.     Defendant Lisa Sophos is Assistant Director of Curriculum & Instruction at Blue Ridge Academy and is sued in her official capacity only.

27.     Defendant Jessie Maron is President of the Blue Ridge Academy Board of Directors and is sued in her official capacity only.

28.     Defendant Visions in Education ("Visions") is a charter school in SJUSD that offers an independent study program called "Home School Academy," through which parents can access public funds to purchase the curricula of their choice and then homeschool their children, with limited oversight by Visions employees. Families in Amador, Contra Costa, El Dorado, Placer, Sacramento, San Joaquin, Solano, Sutter, and Yolo Counties are eligible to enroll in Visions.

29.     Defendant Brian Albright is Principal of the Home School Academy of Visions in Education and is sued in his official capacity only.

30.     Defendant Steve Olmos is Superintendent and Executive Director of Visions in Education and is sued in his official capacity only.

31.     Defendant Jennifer Morrison is Director of Instruction at Visions in Education and is sued in her official capacity only.

32.     Defendant Micah Studer is Chief Academic Officer at Visions in Education and is sued in his official capacity only.

COMPLAINT

33.    Defendant Mark Holman is Chairperson of the Visions in Education Board of Directors and is sued in his official capacity only.

## BACKGROUND

**California's "Independent Study" Charter Schools**

34.    Since the establishment of California's charter-school program in 1992, "non-classroom-based" or "independent study" charter schools have offered Californians an option for personalized learning outside the traditional brick-and-mortar school setting. *See* Cal. Educ. Code § 47612.5(b), (d); *Anderson Union High Sch. Dist. v. Shasta Secondary Home Sch.*, 4 Cal. App. 5th 262, 276, 208 Cal. Rptr. 3d 564, 574 (2016), *as modified on denial of reh'g* (Nov. 16, 2016).

35.    Blue Ridge and Visions are both tuition-free charter schools that offer funding to support independent study programs with instructional materials that parents and their children are allowed to select based on their own private preferences. These programs are available to residents of the California counties served by the schools.

36.    Blue Ridge describes its mission as "to provide a safe, collaborative and individualized learning experience in partnership with families and the community." *See* Blue Ridge Acad., *Our Approach*, https://theblueridgeacademy.com/about/our-approach. Under Blue Ridge's "independent study model," parents can access public funds to use as they deem appropriate to purchase materials to teach their own children in the privacy of their own homes. *Id.* The program relies on parents to choose how to educate their children, with only limited supervision by Blue Ridge's "Homeschool Teachers," who periodically review work samples to verify attendance and help to ensure that students are meeting basic statewide educational standards. *See* Blue Ridge Acad., *Curriculum*, https://theblueridgeacademy.com/academics/curriculum; Ex. A at 17, 24 (Blue Ridge Acad., Parent-Student Handbook: 2022–2023 (excerpted)).

COMPLAINT

37.     As Blue Ridge's handbook explains, this model of "personalized learning" is supposed to allow students to "grow in an environment of inclusion, individualization and accountability" and "thrive in the style of education that best fits their individual needs." Ex. A at 4–5. The academic program is "designed to be extremely flexible and customizable" so as to meet each student's "own interests and specific learning needs." *Id.* at 4, 10.

38.     Furthermore, "[i]n order to allow families flexibility on their personalized learning path," Blue Ridge makes available an "Instructional Planning Amount[]" that allows parents to use "state funds" to order a wide variety of educational items and services, including homeschooling curricula, enrichment materials, field trips, art lessons, cooking classes, or gym classes. *Id.* at 23–24. Despite this broad flexibility, however, the handbook states that "[a]ll orders must be secular." *Id.* The handbook does not set forth any other restrictions on the ideological content of the curricula.

39.     To meet state independent-study guidelines, Blue Ridge periodically collects "work samples" that reflect the progress a student has made through homeschool learning. *Id.* at 33. To be "[a]cceptable," a work sample must meet basic criteria such as demonstrating "neat and organized work" and demonstrating "a good reflection of your child's learning and abilities." *Id.* Even if the work sample meets all of those basic requirements, however, the work sample is deemed "acceptable" only if it is "non-sectarian (non-religious)." *Id.* Again, the handbook does not set forth any other restrictions on the ideological content of the work samples.

40.     The "Homeschool Teacher" must approve all requests to use instructional planning amounts. *Id.* at 23–24. Families of grades K-8 students are required to meet with their "Homeschool Teacher" "every 20 school days," and high school students are "expected to meet with their teacher regularly to ensure adequate progress is made toward completing courses." *Id.* at 17.

COMPLAINT

41.     In a similar vein, Visions offers a program of "parental choice with our support" that is designed to "honor[] your right to educate your children." *See* Visions in Educ., *Home School (TK-8)*, http://www.viedu.org/home-school.

42.     Through Visions' "Home School Academy," "parents select curriculum and educate their child in their own homes." *See* Visions in Educ., *TK-8 Home School Frequently Asked Questions: Home School Academy*, https://www.viedu.org/home-school/faqs/ (under question "What is homeschooling?"). The program offers these "[p]arent educators" thousands of dollars each year in public funding as a "student budget" that they can use for "curriculum, materials and support services" of their own choosing. *Id.* (under question "Does Visions provide individual student budgets"). Meanwhile, Visions' "credentialed teacher[s]" "assist[]" by providing "advice" and helping to "ensure that California State Standards are being met." *Id.* (under question "What is homeschooling?"). They also track student progress towards meeting those standards by periodically collecting work samples. *See id.*

43.     If parents choose curricula that do not meet state standards on their own, Visions allows parents to use "supplemental curricula" to fill in the gaps. *See* Visions in Educ., *Online Information Sessions for New Students: TK-8 Info Session Recording*,[1] https://www.viedu.org/events/online-information-sessions-for-new-students-families/. Parents work with credentialed teachers to ensure that a parent's chosen "core" curriculum is supplemented as necessary to fulfill California state standards as part of a student's overall education plan. *Id.*

44.     Once a parent submits orders for educational and enrichment materials, the credentialed teacher will then "review and approve all expenditures of instructional budget funds." *Id.* The credentialed teacher also reviews work samples for quality, completion, and "mastery of California State Standards," and approves

---

[1] *Also available at* https://youtu.be/74wfITReGK4?si=wEJmy26YqaXTMtre.

COMPLAINT

parent-assigned grades in accordance with the TK-5 Grading Policy provided to parent-educators. *Id.*

45.     Visions states that the "individualized instruction" and "personalized learning" it offers is supposed to cater to the "individual needs" of students to "maximize academic growth and success." *Id.* Visions explains that its model "works best for families who want to take a more involved role in their child's education." *See* Visions in Educ., *TK-8 Home School Frequently Asked Questions*, https://www.viedu.org/home-school/faqs/ (under question "How do I know if homeschooling is for me?").

**The Woolard and Gonzales Families**

46.     John and Breanna Woolard live and work in Santa Fe Springs, California, where John is a pastor at a small church in his community and works in the registrar's office at a local Christian university to support his family. They are the proud parents of five children, three of whom are school-aged. Their daughter, A.W., is currently enrolled with Blue Ridge. Until recently, their sons, E.W. and O.W., were also enrolled. The Woolards plan to return O.W. to Blue Ridge if the anti-religious discrimination stops.

47.     Along with her husband, Hector, John Woolard's mother, Diana, is the legal guardian of two school-aged grandchildren, C.W.1 and C.W.2, who are also enrolled with Blue Ridge.

48.     The Woolard and Gonzales families are devout Christians. Their sincerely held religious beliefs motivate them to instill that faith in their children and give their children an education consistent with that faith through courses and other instructional materials that reflect a religious worldview.

49.     Despite Blue Ridge's model of personalized learning and customizable coursework, Blue Ridge has forbidden the Woolard and Gonzales families from using instructional planning funds to purchase instructional materials that include religious viewpoints. The families have encountered hostility to curricular materials

COMPLAINT

that have any religious affiliation, align with a religious worldview, or even reference religion. The student handbook even states explicitly that "Acceptable [w]ork [s]ample[s] . . . . [m]ust be non-sectarian (non-religious)." Ex. A at 33.

50.    For instance, in July 2022, John Woolard asked Blue Ridge whether his daughter, A.W., would be able to use the instructional planning amounts to purchase religious works by Jonathan Edwards and William Penn as part of her study of colonial America. As John explained, many important American colonial figures were deeply religious and "[t]o study these people means tapping into the things they wrote." A member of Blue Ridge's enrichment team, Dawnelle Bailey, responded in a July 14, 2022, email that instructional funds cannot be used to purchase "any curriculum products, classes, etc. . . . that contain religious content," citing enrichment guidelines for "non-approved" items. The Woolards' Blue Ridge "Homeschool Teacher," Erin Ryan, confirmed that the only problem with ordering these books would be "the religious content," which is "not . . . allowed."

51.    Also in July 2022, John Woolard requested that Blue Ridge permit the use of instructional planning amounts to purchase religious materials in light of the Supreme Court's recent Free Exercise Clause decision in *Carson v. Makin.* Samantha Haynes, Blue Ridge's Executive Director and Principal, replied by email dated July 11 that *Carson v. Makin* "does not pertain to CA Education Code or how our school operates" because "[t]here are no changes to CA funding and the requirement for items purchased through Blue Ridge Academy to be non-religious in nature." In a subsequent email dated July 15, Ms. Haynes explained that the California Constitution and the California Education Code prohibit the teaching or funding of anything "religious or faith-based."

52.    On August 4, 2022, Ms. Ryan denied the Woolards' request to use the instructional planning amounts to purchase Bob Jones University's "Focus on Fives" curriculum, which focuses on science, social studies, handwriting, phonics, and reading. Ms. Ryan explained that she could not approve the curriculum because the

COMPLAINT

description indicates that it also provides "[w]orldview shaping," including themes such as "God is great, and God is good; God created me and all things; the Bible is God's Word, and it is true; and I learn in order to serve God and others." In response to a follow-up question from John, she confirmed that the "[a]cademics" are "fine" and that the problem is the "religious aspect."

53.    On August 4, 2022, Ms. Ryan sent an email to John informing him that Blue Ridge's vendor department had refused approval for materials from Emmaus Classical Academy, a curriculum provider that offers courses in history, literature, philosophy, and theology to help students learn in the context of a classical Christian perspective. John and Breanna hoped to be able to use the instructional planning amounts to support their daughter A.W.'s enrollment in those courses. In the message denying approval, the vendor department explained that, among other criteria, vendors "may not be non-secular in nature." When John sought further clarification from Ms. Ryan, she spoke with him over the phone and confirmed that the reason for the denial was Blue Ridge's blanket ban on religious organizations as vendors.

54.    On August 8, 2022, Ms. Ryan sent an email to Breanna Woolard informing her that she would not be allowed to use instructional planning amounts to purchase *Bede's History of Me*, a book that introduces children to the basics of history, including the history of holidays, the history of toys, and the history of sports. Ms. Ryan explained that she could not approve the book because the product description said the book provided "[a] clear way to teach the importance of timelines and how God works in time."

55.    On August 8, 2022, the Gonzales family's "Homeschool Teacher," Carolina Salcedo-Adame, denied Diana Gonzales's request to use instructional planning amounts to purchase curriculum books from Bob Jones University. The rejected books covered a range of subjects including math and science. Ms. Salcedo-Adame sent Diana an email explaining that Blue Ridge cannot purchase "any . . .

COMPLAINT

products that are faith-based." When Diana expressed frustration that a math course had been rejected just because it came from a faith-based university, Ms. Salcedo-Adame replied that "[i]n order for our school to stay compliant with the state, we cannot approve any religious content curriculum." Ms. Salcedo-Adame suggested that Diana could "use it on [her] own and order it out of pocket" but could not use it for "Blue Ridge curriculum/work samples" and could not order it "with funds."

56.    In October 2022, John asked Ms. Ryan if his daughter A.W. could study church history as an elective. Ms. Ryan told him no, unless A.W. also studied other world religions as part of the same course. Ms. Ryan also forwarded an email from a school official, Lisa Sophos of the "Curriculum Fulfillment Team," which confirmed Blue Ridge's position that "the course must recognize and review all religions or churches and not just one." When John sought additional clarification, Ms. Ryan forwarded him a message from Ms. Sophos stating that "[i]t is imperative the course does not reflect a faith-based direction or focus."

57.    In October 2022, Diana Gonzales submitted work samples for her grandchildren, C.W.1 and C.W.2. The work sample for C.W.1 was a grammar worksheet that taught sentence structure using examples of sentences about agriculture and included a picture of the Bible with the sentence "God sends the rain to help plants grow." *See* Ex. B. Ms. Salcedo-Adame informed Diana that Blue Ridge "can't accept any work sample with any religious wording on it" and requested that she submit different work samples.

58.    In February 2023, Breanna Woolard requested the use of instructional planning funds to purchase an economics textbook for A.W. from Emmaus Classical Academy. The product description stated: "Students will encounter communism through Marx & Engels, socialism through the writing of John Stuart Mill, the costs of opportunity and destruction in Frederic Bastiat, and different views of the Christian use of money through the works of John Chrysostom, John Wesley, and St. Thomas Aquinas. This volume presents primary texts without introduction or

commentary[.]" Blue Ridge denied the request on the ground that the textbook "contains a Biblical worldview."

59.    As these examples illustrate, the Woolard and Gonzales families have worked hard to identify instructional materials that incorporate a faith-oriented worldview without sacrificing academic rigor. There is no dispute that the curricula the Woolard and Gonzales families wish to use satisfy state educational standards. Blue Ridge is rejecting curriculum orders and work samples not for any academic deficiency, but solely because school employees deem them to be "too religious."

60.    Despite Blue Ridge's stated respect for parents' right to direct the education of their children, and the wide latitude parents are given to decide how best to use public funds for instructional materials, parent-selected, faith-based learning materials are singled out for exclusion.

61.    As a result of these discriminatory policies and practices, the Woolard and Gonzales families have been forced to spend thousands of dollars out of pocket to purchase educational materials with their own money—a significant financial hardship. And even where they manage to afford purchasing their own materials independently, their children's work samples will be rejected if the samples reflect their children's religious viewpoints.

62.    In addition, Blue Ridge's policy prohibiting students from expressing a religious perspective in work samples prevents the Woolard and Gonzales children from engaging in constitutionally-protected expression.

**The Dodson Family**

63.    Carrie Dodson is a widow and devout Christian mother of an only child. Her Christian faith is central to her identity and worldview, and her sincerely held religious beliefs motivate her to provide her child with a faith-based education.

64.    For the 2022–2023 school year, Carrie selected *The Good and the Beautiful* curriculum and expressed willingness to supplement it with another curriculum and additional educational material if necessary.

COMPLAINT

65.    *The Good and the Beautiful* offers a variety of courses, including math, history, science, and language arts, and emphasizes "family, God, high character, nature, and wholesome literature."

66.    Visions rejected Carrie's choice of curriculum for the 2022–2023 school year for the sole reason that Visions would not accept assignments derived from a faith-based curriculum. Visions has refused to allow Carrie to use this academically rigorous, faith-based curriculum even though she was willing to supplement it with supporting curricula as needed to ensure that her overall homeschooling approach met all California state standards, as Carrie has done in the past and as is expressly permitted in the TK-5 Grading Policy she received from Visions.

67.    On August 19, 2022, C.D.'s "credentialed teacher," Amber Presnall, told Carrie, "As a publicly funded school, Visions in Education cannot approve or consider work from faith based curriculum." In this email, Ms. Presnall acknowledged that Carrie was "very excited" about using *The Good and the Beautiful* curriculum for "Math and ELA [English Language Arts]" and told Carrie that it "sounds amazing." Nevertheless, Ms. Presnall indicated that Carrie could not select this curriculum because "it is a faith[-]based curriculum."

68.    On August 22, 2022, Principal Albright sent an email to Carrie with the following statement confirming that position: "[W]e are not able to purchase nor consider for instruction or attendance any faith-based materials at Visions." He stated further that under California law, "[n]o religious materials may be assigned as a part of the independent study, and students cannot use religious materials to complete independent study assignments." Principal Albright explained that Visions could not receive "apportionment (attendance) credit for work using religious materials" and that "[b]ecause Visions is a publicly funded school and [Visions is] using public funds [Visions is] required to follow these guidelines."

COMPLAINT

69.     On August 26, 2022, Carrie sent an email to Jennifer Morrison, Director of Instruction at Visions, attaching examples of C.D.'s completed work from *The Good and the Beautiful* curriculum. These examples included a math worksheet testing concepts such as multiplication and division. *See* Ex. C. Carrie asked Visions to explain what it found objectionable about these materials and why her son should be prohibited from receiving full credit for these assignments.

70.     On September 14, 2022, Micah Studer, Chief Academic Officer at Visions, issued a letter to Carrie titled "Use of Sectarian Materials for Attendance and Assignment Completion." In the letter, Mr. Studer cited "California Constitution Article 9, section 8 and California Education Code section [47605](e)(1) and [51747] and Section 11969 of Title 5 of the California Code of Regulations"[2] as prohibiting Visions from "using sectarian or religious curriculum when evaluating C.D.'s work samples for attendance and work completion purposes." He identified no other basis for rejecting Carrie's chosen curriculum.

71.     Mr. Studer warned Carrie that Visions could initiate involuntary expulsion proceedings if Carrie continued to use a faith-based curriculum for her son's assignments.

72.     Throughout the fall of 2023, Carrie participated in a series of meetings with school officials and counsel for Visions to reiterate her request to use *The Good and the Beautiful* curriculum.

73.     On January 18, 2023, Principal Albright sent Carrie a letter informing her that her son "will be disenrolled from Visions in Education Charter School as of January 31, 2023." While the purported basis for disenrollment was failure to complete assigned work, an earlier letter from school administrators had

---

[2]     The letter says "California Education Code section 470605(e)(1) and 517474, and Section 11969 of Title 5 of the California Code of Regulations." These citations appear to be typos; the section numbers are off by one digit from the relevant provision. A subsequent letter from Visions, dated June 12, 2023, confirmed that Visions had been referring to Sections 47605(e)(1) with the first reference and 11963 with the third, but that letter did not address the remaining citation.

COMPLAINT

acknowledged that C.D.'s work was being deemed incomplete solely because the school refused to consider assignments derived from religious curricula. Carrie appealed Visions' decision to expel her son, but Visions' appeals panel again refused to permit the Dodsons to use a faith-based curriculum of their choice.

74.    On February 24, 2023, Visions expelled C.D.

75.    This course of events demonstrates that, like Blue Ridge, Visions has discriminated against religious viewpoints in the provision of public funds and the acceptance of work samples. Visions rejected C.D.'s work samples and expelled C.D. not for any academic deficiency, but solely because C.D. sought to use a faith-based curriculum. Despite Visions' stated respect for parents' right to direct the education of their children and the wide latitude parents are given to decide how best to use public funds for instructional materials, faith-based education is singled out for exclusion.

76.    Carrie is not the first parent to have experienced the effects of these discriminatory policies. At a February 24, 2022, meeting of the Visions in Education Board, a concerned parent complained about "religious item exemptions." Visions in Educ., Board of Directors Meeting Minutes, at 11 (Feb. 24, 2022) (minutes approved April 28, 2022). Visions' Superintendent Steve Olmos responded to the comment by "remind[ing] the public that Visions is a public school funded by public dollars and using religious curriculum would be a violation of [Visions'] charter."

**The Schools' Invocation of California Law**

77.    Both Blue Ridge and Visions have attempted to justify their unconstitutional discrimination against religion by claiming that state law prohibits them from honoring Plaintiffs' privately and independently chosen instructional materials to educate their children when those materials include religious content.

78.    Specifically, both schools invoke California Constitution Article IX, Section 8, which states: "No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive

COMPLAINT

control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State."

79.    This provision of California law was first adopted in 1879. Like many similar no-aid provisions enacted around the same time, it has a "shameful pedigree." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2259 (2020) (quoting *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality opinion)). California enacted it three years after the failed Blaine Amendment to the Constitution of the United States. Named after House Speaker James Blaine, the congressman who sponsored it, the Blaine Amendment's prohibition on aid to "sectarian" schools was "born of bigotry" and "arose at a time of pervasive hostility to the Catholic Church and to Catholics in general." *Id.* (quoting *Mitchell*, 530 U.S. at 828–29 (plurality opinion)). California's constitutional provision belongs to that same "checkered tradition." *Id.*

80.    Both schools also point to California Education Code section 47605(e)(1), which states in relevant part: "In addition to any other requirement imposed under this part, a charter school shall be nonsectarian in its programs, admission policies, employment practices, and all other operations . . . ."

81.    Visions also pointed, in its June 12, 2023, letter, to the California Department of Education's Independent Study Frequently Asked Questions, which states: "[N]o religious materials may be assigned as a part of independent study, and pupils cannot use religious materials to complete independent study assignments. Attendance cannot be taken and the [local educational agencies] cannot claim apportionment credit for work using religious materials, [except for some study of religion in certain English and history-social science units]." Cal. Dep't of Educ., *Independent Study Frequently Asked Questions: Assigned Work* (Sept. 23, 2022), https://www.cde.ca.gov/sp/eo/is/faq.asp (under Question 9).

COMPLAINT

82.     To the extent that California law requires Blue Ridge and Visions to deny Plaintiffs' purchase and use of the instructional materials of their choice simply because those materials reflect a religious worldview, California law conflicts with the United States Constitution.

83.     To the extent that California law requires Blue Ridge and Visions to reject student work that derives from a faith-based curriculum or reflects a religious viewpoint, California law conflicts with the United States Constitution.

84.     The United States Constitution is "the supreme Law of the Land," and state law cannot be used to thwart First Amendment rights. *See* U.S. Const. art. VI, cl. 2 ("Supremacy Clause"); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]").

**Allegations Regarding Injunctive Relief**

85.     As a result of Blue Ridge's discriminatory policies and practices, the Woolard and Gonzales families have been denied the ability to use state funds, which are generally available to parents through independent-study charter schools, for their own private choices of instructional materials, merely because those instructional materials align with their faith.

86.     As a result of Visions' discriminatory policies and practices, Carrie Dodson has been denied the ability to select, through her own private choice, a curriculum for her child using public funds that are generally available through independent study charter schools. Her son has now been expelled from the program entirely because of Ms. Dodson's desire to use religious curricula, and she will be unable to access any student budget to continue with independent instruction of her son through Visions. Likewise, her son will be deprived of the credential of a Visions

COMPLAINT

1   education and the opportunities for connection with other Visions students that the

2   Visions program enables.

3         87.    Plaintiffs have been irreparably harmed by deprivation of their

4   constitutional rights. The "loss of free exercise rights 'for even minimal periods of

5   time'" amounts to irreparable harm for the purpose of preliminary injunctive relief.

6   *See Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (quoting *Roman*

7   *Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam)); *see also Klein v.*

8   *City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) ("Both this court and

9   the Supreme Court have repeatedly held that '[t]he loss of First Amendment

10  freedoms, for even minimal periods of time, unquestionably constitutes irreparable

11  injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

12        88.    Furthermore, "it is always in the public interest to prevent the violation

13  of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

14  2012) (quotation marks omitted); *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir.

15  2014) ("[T]he public interest favors the exercise of First Amendment rights");

16  *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions

17  protecting First Amendment freedoms are always in the public interest."). The

18  balance of equities weighs strongly in favor of the injunctive relief that Plaintiffs

19  seek. State officials and school administrators acting under color of state law have

20  no valid interest in discriminating against religion. The Supreme Court has already

21  ruled that "the Establishment Clause is not offended when religious observers and

22  organizations benefit from neutral government programs." *Espinoza*, 140 S. Ct. at

23  2254. Blue Ridge and Visions pride themselves on facilitating homeschooling

24  experiences that are tailored to individual families' needs. Allowing parent educators

25  to purchase and use faith-based curricula, while ensuring that their children meet

26  state educational standards, would be entirely consistent with that mission.

27  Meanwhile, the Woolard, Gonzales, and Dodson families have a strong interest,

28  protected by the First Amendment, in educating their children in accordance with

21

their deeply held religious beliefs and participating equally in California's publicly funded independent-study programs.

89.    The public interest would be well-served by correcting and remedying the constitutional harm that Defendants are inflicting on Plaintiffs. Independent study programs are designed to allow families to design and choose instructional materials that respond to each pupil's unique educational needs, interests, aptitudes, and abilities. Excluding parent-selected and parent-directed faith-based instruction from these programs solely because of their religious character denies religious families equal access to the benefits of these personalized learning experiences. Singling out religious viewpoints for exclusion also hampers the free exchange of ideas, which is enriched by faith-based perspectives.

90.    If this unfair exclusion of religious viewpoints were remedied, Plaintiffs' children would maintain or renew their enrollment in Visions or Blue Ridge and use the generally available public funds to select faith-based instructional materials.

## CLAIMS FOR RELIEF

### COUNT 1

**(FIRST AMENDMENT: FREE EXERCISE CLAUSE)**
*Refusal to Disburse Instructional Funds*

91.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 90.

92.    The Free Exercise Clause of the First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I.

93.    The Free Exercise Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the United States Constitution.

94.    Under the Free Exercise Clause, imposing "special disabilities on the basis of religious views or religious status" triggers strict scrutiny. *Trinity Lutheran*

COMPLAINT

*Church of Columbia*, *Inc. v. Comer*, 582 U.S. 449, 458–61 (2017) (quotation marks omitted). Accordingly, the Free Exercise Clause does not permit a state to "discriminate[] against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." 582 U.S. at 462.

95. The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987, 1996 (2022) (collecting cases).

96. The Supreme Court recently applied this non-discrimination principle to a publicly funded school choice program in *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020). The Court held that a Montana constitutional provision restricting aid to religion could not be applied to invalidate a state program that provided scholarships to students who attend private schools, including some faith-based schools. Where there is a "conflict between the Free Exercise Clause and the application of" a state constitutional provision, the Court explained, a court must "disregard" the state provision and decide the case according to the Constitution of the United States. *Id.* at 2262 (cleaned up).

97. Similarly, in *Carson*, 142 S. Ct. at 1996, the Supreme Court held that Maine violated the Free Exercise Clause when it excluded religious education from a tuition assistance program for parents sending their children to private schools. Applying strict scrutiny, the Court found no compelling interest in Maine's "nonsectarian" requirement. The Court explained that "a neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause" of the First Amendment. 142 S. Ct. at 1997 (citing *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002)).

98. Blue Ridge and Visions function as programs that subsidize parents' independent choices about how to educate their children. For constitutional

COMPLAINT

purposes, then, these schools are materially indistinguishable from the publicly funded parental choice programs in *Carson* and *Espinoza*. When Blue Ridge or Visions "pays [instructional funds] for certain students at [home] schools—so long as the [home] schools are not religious," that is "discrimination against religion." *Id.* at 1998.

99. Defendants categorically exclude Plaintiffs from an otherwise available government benefit. Under Blue Ridge and Visions' independent study models, parents can access public funds to choose from a wide range of curricula and other instructional materials that align with their values and educational goals. But the schools forbid parents from using the instructional funds to purchase products that are not secular, even if they fully satisfy California state educational standards and no matter how well they meet the student's individual learning needs and preferences. Faith-based education is singled out for a substantial financial penalty.

100. Plaintiffs' sincere religious beliefs motivate them to choose a religious curriculum and other educational products to instruct their children. The schools' policy of rejecting faith-based instructional materials forces parents to choose between accessing a broadly available public benefit and exercising their religion by giving their children an education aligned with their Christian faith.

101. The schools' refusal to disburse funds for the parent-directed purchase of instructional materials that reflect a religious worldview solely on the basis that the curricula are religious in character does not reflect neutrality toward religion, but rather evidences hostility to and impermissible targeting of religion.

102. Under the First Amendment, such discrimination against religion triggers strict judicial scrutiny and must be narrowly tailored to a compelling government interest.

103. "[C]ategorical[ly] ban[ning]" parents from choosing faith-based instructional materials to educate their children, while allowing secular options, furthers no legitimate government interest, let alone a compelling government

COMPLAINT

interest. *Espinoza*, 140 S. Ct. at 2261. A publicly funded education program of "true private choice" does not offend the Establishment Clause. *Zelman*, 536 U.S. at 649–52. And a state's purported "interest in separating church and State 'more fiercely' than the Federal Constitution . . . cannot qualify as compelling' in the face of the infringement of free exercise here." *Espinoza*, 140 S. Ct. at 2260 (citation and quotation marks omitted).

104.   The schools' discrimination against religious families is not narrowly tailored to furthering any compelling government interest.

105.   Furthermore, under the unconstitutional conditions doctrine, the government cannot condition public benefits on the surrender of a constitutional right. The "unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). The categorical exclusion of faith-based instructional materials from the independent study model forces parents to choose between exercising their religious beliefs and receiving generally available public funding to participate in an individualized learning program.

## COUNT 2

### (FIRST AMENDMENT: FREE EXERCISE CLAUSE)
*Refusal to Accept Faith-Based Work Samples*

106.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 105.

107.   Even when parents pay out of pocket for their own faith-based instructional materials, Visions and Blue Ridge refuse to accept work samples that derive from a faith-based curriculum.

COMPLAINT

108.   Work samples that reflect a religious perspective are deemed categorically unacceptable by Blue Ridge, no matter how well they reflect the student's learning and abilities and respond to the subject matter.

109.   A "categorical ban" on accepting work samples that derive from a religious curriculum does not reflect neutrality towards religion, but rather evidences hostility to and impermissible targeting of religion. *Espinoza*, 140 S. Ct. at 2261.

110.   Plaintiffs' and their children's sincere religious beliefs motivate them to use curricula that reflect a religious worldview and submit work samples that reflect religious perspectives. The schools' policy of rejecting schoolwork that derives from a faith-based curriculum and Blue Ridge's policy of rejecting schoolwork that reflects a religious viewpoint substantially burdens the free exercise of their faith.

111.   Under the First Amendment, such discrimination against religion triggers strict judicial scrutiny and must be narrowly tailored to a compelling government interest. *Espinoza*, 140 S. Ct. at 2254.

112.   Categorically prohibiting work samples that reflect a religious orientation or that derive from a faith-based curriculum, no matter how well the work samples meet the goals of the work-sample policy, furthers no legitimate government interest, let alone a compelling government interest.

113.   Nor is this blanket ban on work samples that reflect a religious orientation or derive from a faith-based curriculum narrowly tailored to any compelling government interest.

114.   The categorical exclusion of faith-based work samples from the independent study programs forces families to choose between exercising their religious beliefs and participating in a tuition-free, publicly funded individualized learning program.

COMPLAINT

1

**COUNT 3**

2

**(FIRST AMENDMENT: FREE SPEECH CLAUSE)**
*Refusal to Accept Faith-Based Work Samples*

3

4      115.   Plaintiffs reallege and incorporate by reference paragraphs 1 through

5   114.

6      116.   The Free Speech Clause applies to states and their subdivisions and

7   municipalities through the Fourteenth Amendment to the U.S. Constitution.

8      117.   Viewpoint discrimination is an "egregious" affront to the First

9   Amendment, even if the forum in which the discrimination occurs is of "[the state's]

10   own creation." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819,

11   829 (1995); *see also Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508

12   U.S. 384, 393 (1993) ("[I]t discriminates on the basis of viewpoint to permit school

13   property to be used for the presentation of all views . . . except those dealing with

14   the subject matter from a religious standpoint").

15      118.   In refusing to accept student work that reflects students' religious

16   viewpoints, Blue Ridge and Visions are practicing egregious viewpoint

17   discrimination. *See Rosenberger*, 515 U.S. at 828 ("It is axiomatic that the

18   government may not regulate speech based on its substantive content or the message

19   it conveys.").

20      119.   "The government must abstain from regulating speech," where, as here,

21   "the specific motivating ideology or the opinion or perspective of the speaker is the

22   rationale for the restriction." *Id.* at 829 (citing *Perry Educ. Ass'n v. Perry Loc.*

23   *Educators' Ass'n*, 460 U. S. 37, 46 (1983)).

24      120.   Discrimination based on the substantive content of speech or the

25   message it conveys triggers strict judicial scrutiny and must be narrowly tailored to

26   a compelling government interest.

27

28

COMPLAINT

121.   Categorically refusing to accept a student's work samples because they reflect a religious viewpoint or derive from a faith-based curriculum furthers no government interest, let alone a compelling government interest.

122.   This discrimination against religious viewpoints is not narrowly tailored to further any compelling government interest.

**COUNT 4**

**(FIRST AMENDMENT: FREE SPEECH CLAUSE)**
*Refusal to Disburse Instructional Funds*

123.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 122.

124.   Singling out faith-based education for exclusion from a publicly funded homeschooling program also violates the Free Speech Clause of the First Amendment.

125.   A policy that "regulates what kind of educational programs . . . can [be] offer[ed] to different students . . . squarely implicates the First Amendment." *Pac. Coast Horseshoeing Sch.*, *Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020).

126.   The First Amendment protects the right to transmit information, opinions, and ideas. *See id.* (vocational training); *Roberts v. U.S. Jaycees,* 468 U.S. 609, 636 (1984) (O'Connor, J., concurring) ("[P]rotected expression may also take the form of quiet persuasion, inculcation of traditional values, [and] instruction of the young"). "A teacher's teaching is expression to which the First Amendment applies." *Wilson v. Chancellor*, 418 F. Supp. 1358, 1362 (D. Or. 1976), *supplemented*, 425 F. Supp. 1227 (D. Or. 1977).

127.   By the same token, the First Amendment protects the "right to receive information and ideas." *Pac. Coast Horseshoeing*, 961 F.3d at 1069 (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)). That right "naturally extends to educational settings." *Id.* (citing *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972)).

128.   The "liberty of parents and guardians to direct the upbringing and education of children under their control" is deeply embedded in the American constitutional tradition. *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *see also Wisconsin v. Yoder*, 406 U.S. 205, 213–14 (1972) ("[T]he values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society").

129.   In *Rosenberger,* the Supreme Court held that a state may not withhold from student religious publications funding provided to comparable secular student publications. 515 U.S. at 829. The Court emphasized "the critical difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Id.* at 841 (quotation marks omitted).

130.   Unlike public school teachers in conventional classroom-based schools, parents who use faith-based instructional materials to homeschool their children are not engaged in government speech; parents' instruction of their own children in their own homes is their own private speech.

131.   As in *Rosenberger,* the presence of a public funding mechanism does not transform parents' private speech into government speech.

132.   Indeed, "it discriminates on the basis of viewpoint to permit school property to be used for the presentation of all views . . . except those dealing with the subject matter from a religious standpoint," *Lamb's Chapel*, 508 U.S. at 393.

133.   Thus, under the Free Speech Clause, Visions and Blue Ridge cannot withhold from faith-based homeschooling funding that is provided to comparable secular homeschooling.

134.   Through the independent charter school model, Californian parents can use generally available instructional funds to teach their students from a wide range of perspectives—unless that perspective is religious. In refusing to disburse

COMPLAINT

instructional funds to parents who wish to use those funds to purchase faith-based materials, Blue Ridge and Visions are engaging in unconstitutional viewpoint discrimination.

135.   This discriminatory policy also infringes the right of Plaintiffs' children to receive information and ideas derived from faith-based instructional materials.

136.   Categorically excluding Plaintiffs and other religious parents from accessing public funds to teach their children, basis solely on the religious worldview reflected in their intended teaching, furthers no government interest, let alone a compelling government interest.

137.   This discrimination against religious viewpoints is not narrowly tailored to further a compelling government interest.

## **PRAYER FOR RELIEF**

For the reasons set forth above, Plaintiff request that the Court:

(1)   Enter a preliminary and permanent injunction restraining the Defendants, their officers, agents, employees, and all others acting in concert with them, from enforcing or applying California law or school policy to exclude Plaintiffs from choosing to spend funds generally available to parents for the purchase of instructional materials on faith-based curricula and other instructional materials that reflect a religious viewpoint;

(2)   Enter a preliminary and permanent injunction restraining the Defendants, their officers, agents, employees, and all others acting in concert with them, from enforcing or applying California law or school policy so as to prohibit the acceptance of work samples that derive from a faith-based curriculum or reflect a religious viewpoint;

(3)   Declare that California Constitution Article IX, Section 8 violates the Free Exercise and Free Speech Clauses of the First Amendment to the

30

United States Constitution to the extent that it requires Defendants to prohibit parents from accessing public funds for the purchase of faith-based instructional materials or requires Defendants to prohibit students from submitting work samples that derive from a faith-based curriculum or reflect a religious viewpoint;

(4)   Declare that Section 47605(e)(1) of the California Education Code violates the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution to the extent it requires Defendants to prohibit parents from choosing a faith-based curriculum or requires Defendants to prohibit students from submitting work samples that derive from a faith-based curriculum or reflect a religious viewpoint.

(5)   Award Plaintiffs reasonable attorneys' fees and costs;

(6)   Award Plaintiffs nominal damages; and

(7)   Award all other and further relief as the Court may deem appropriate.

Dated: October 11, 2023                    Respectfully submitted,

KING AND SPALDING LLP
*/s/ Ethan P. Davis*
Ethan P. Davis (SBN CA 294683)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Ph.: (415) 318-1228
Fax: (415) 318-1300
edavis@kslaw.com

Alexander Kazam (*pro hac pending*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Ph.: (202) 626-2992
Fax: (202) 626-3737
akazam@kslaw.com

31

COMPLAINT

Nicole Bronnimann (*pro hac pending*)
KING & SPALDING LLP
1100 Louisiana St., Suite 4100
Houston, TX 77002
Ph.: (713) 276-7402
Fax: (713) 751-3290
nbronnimann@kslaw.com

David J. Hacker (SBN CA 249272)
Jeffrey C. Mateer (*pro hac pending*)
Justin E. Butterfield (*pro hac pending*)
Lea E. Patterson (*pro hac pending*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Ph.: (972) 941–4444
Fax.: (972) 941–4457
jmateer@firstliberty.org
dhacker@firstliberty.org
jbutterfield@firstliberty.org
lepatterson@firstliberty.org

*Counsel for Plaintiffs*

COMPLAINT

# Exhibit A



## Blue Ridge Academy Mission and Vision Statement

### Mission Statement

The mission of Blue Ridge Academy is to provide a safe, collaborative and individualized learning experience in partnership with families and the community. Our independent study model allows our students opportunities to grow in an environment of inclusion, individualization and accountability. We will provide support and resources to students and families to ensure success towards their goals academically, emotionally, and socially.

### Vision Statement

The vision of Blue Ridge Academy is to support and empower students to demonstrate the values and skills that promote knowledge and critical thinking. Our students are prepared to thrive in and contribute to their communities with kindness, respect, integrity and purpose.

## Description of the Program

Blue Ridge respects a family's right to educate their children and strives to offer innovative, personalized learning options for all families. Our programs engage students with a truly personalized learning plan based on their own interests and specific learning needs while preparing them for success both now and in the future. Enrollment in our independent study program is tuition free.

Our programs provide students with many opportunities:

- Learn at home or on the go with options for flexible, standards based learning pathways using choices of curriculum, online platforms, and or bundled textbook programs
- Receive guidance, support, and assistance in person and virtually from your assigned credentialed Homeschool Teacher
- Optional field trips and community events
- Numerous and diverse vendor services and programs

# Schoolwide Learner Outcomes (SLOs)

At BR, we have goals for our students. They are known as our Schoolwide Learner Outcomes, and they represent what students at Blue Ridge Academy engage in and strive to achieve when they work through our program. The SLOs are a part of our school culture, and they reflect our school vision, the College and Career Readiness standards, the education of the whole child, and the values of our homeschool community. Teachers, students, and parents partner together throughout the year to review and reflect on student progress of the SLOs. SLOs are also an important part of the WASC process as they demonstrate our school's commitment to support student learning.

**Blue Ridge Academy Students are...**

***Navigators of the Digital World***
*Navigators of the digital world who are proficient in the use of technology, media, and online resources*

***Self-Directed***
*Self-directed and motivated students who are able to set attainable goals to achieve academic success.*

***Personalized Learners***
*Personalized Learners who are able to thrive in the style of education that best fits their individual needs.*

***Independent Critical Thinkers***
*Independent Critical Thinkers who have the ability to problem solve, take ownership and apply their knowledge to a variety of problems.*

***Responsible Citizens***
*Responsible Citizens who demonstrate integrity and respect while actively seeking knowledge of local and global issues.*

***Effective Communicators***
*Effective Communicators who can thoughtfully articulate their thinking with confidence while collaborating with peers.*

Curriculum Choices & Learning Paths

Blue Ridge's academic program is designed to be extremely flexible and customizable. Working together, credentialed teachers and parents design a learning plan for each student that can incorporate:

- A variety of curriculum options and platforms
- Academic support including interventions
- A child's optimal learning modalities
- Seemingly limitless enrichment resources, materials, and experiences
- School sponsored learning enrichment, field trips, and student activities
- A blend of virtual and in-person support

If you are looking for an engaging, easy-to-follow learning platform, explore the options below managed by our Curriculum Department. Other curriculum options such as Timberdoodle, Bookshark, Moving Beyond the Page, BYU Independent Study, UC Scout, and many more can be ordered through the Procurify System.

Blue Ridge Academy curricula include learning paths and platforms designed to address the needs of all students including:

- English Language Learners
- Students in Special Education
- Students with 504 Plans
- Socioeconomically Disadvantaged Youth
- Homeless/Foster Youth
- Gifted & Talented

To ensure students enjoy learning and feel prepared for life after school, our Blue Ridge curriculum department works closely with partners to offer the opportunity to enroll in engaging online platforms and we encourage you to explore these options below. As well, students are provided with access to supplemental yearly subscriptions such as MobyMax, BrainPop, NetTutor, Touch-Type, Read Spell, and others. Other homeschool-friendly curriculum options can be ordered through our Enrichment department.

## Objectionable Materials

Blue Ridge Academy aims to remove any barriers to learning so that all students are able to make personal and academic progress. If your family finds certain lessons or materials in a particular unit of study to be objectionable for various personal reasons, please contact your Homeschool Teacher and she/he will work with you to identify alternative lessons to meet the lesson objectives.

## Academic Expectations

### TK-8th Grade

Families choose to enroll at BR for a variety of reasons, but at the cornerstone of each decision is a supportive partnership between the family and their chosen/assigned credentialed Homeschool Teacher. Our school provides the tools and guidance for students to experience a high quality education by providing access to personalized curriculum and instruction. Students need to be engaged in learning each school day. Families and credentialed Homeschool Teachers work together to provide support for struggling students. Families are required to meet with their credentialed Homeschool Teacher once every 20 school days.

### High School

All high school students enrolled at BR will discuss and create an Individualized Graduation Plan (IGP) with their Homeschool Teacher. Short and long term goals will be created based on the needs of each student. A guidance counselor is also assigned to each student and will review the IGP. Students must be enrolled in a minimum of four courses each semester and should complete a minimum of five courses each semester (25 units) to remain on track for graduation. Students are expected to meet with their teacher regularly to ensure adequate progress is made toward completing courses.

## I CAN Statements

I CAN statements are family friendly guides that can be used to help your family and ensure your students are on track for their grade level. All learning objectives for Math, Language Arts, Science and Social Studies are provided, written in family-friendly language. I CAN statements help make grade level learning targets clear for families and they address the standards students of the same grade learn in all public schools.

## Academic Integrity

Blue Ridge Academy urges students to conduct themselves ethically and honorably. It is expected that the grade a student earns is based upon work that the student has completed.

By definition, Academic Integrity is the moral code or ethical policy of academia. This includes values such as avoidance of cheating or plagiarism; maintenance of academic standards; honesty and rigor in academic work.

The following behaviors may be considered as acts that do not uphold Academic Integrity:

- Plagiarism
- Talking during a proctored exam
- Copying another student's test/assignment
- Allowing others to copy your work
- Exchanging assignments with other students (either handwritten or computer generated)

- Using a computer or other means to translate an assignment/part of a World Language assignment to another language
- Using summaries or commentaries (Cliff Notes, Spark Notes) in lieu of reading the assigned materials
- Submitting purchased papers
- Altering a grade (on a computer, on a report card, on an assignment)
- Taking an exam for someone else
- Using bribery/blackmail/threats

Any student known to have acted without academic integrity will be subject to disciplinary action in the following manner:

- **First offense:** A grade of F and/or 0% on the assignment/exam with a chance to resubmit within 1 week and parent/guardian notification
- **Second offense:** A grade of F and/or 0% on the assignment/exam with no resubmit and conference with parent/guardian
- **Third offense:** A grade of F in the class, in person conference, and placement on Academic Probation for 1 year
- **Fourth offense:** Disciplinary hearing; possible expulsion from the school

Students placed on Academic Probation may be subject to the following consequences:

- Copy of cheating referral placed in permanent cumulative file
- Proctored unit tests and finals by a Blue Ridge Academy staff member
- Restricted from participating in school activities (field trips, prom, graduation)
- Ineligible to receive letters of recommendation from staff and faculty
- May restrict activities requiring approval, such as but not limited to, work permits, concurrent enrollment, enrichment ordering and other

## Report Cards

### Report Cards - TK-8th

At Blue Ridge Academy, students, parents, and teachers work in partnership to design personalized learning plans and goals. The credentialed Homeschool Teacher affirms the learning plan and is guided by the I CAN statements.

Report Cards are not required for grades TK-8, but families may request them from their teacher. While TK-8 report cards are not required, they are sometimes necessary for other student endeavors such as sports teams, insurance, government verifications, etc. Please consider your family participation in these types of activities when deciding to request a report card or not. We highly recommend that parents of 7th and 8th grade students request a report card as this type of documentation is frequently requested when transitioning into a traditional high school setting. If you do not request a report card, nothing will be stored in a student's cumulative file.

Parents of TK-8th grade students have two (2) Report Card options (Option B is the default if you do not make a selection):

Blue Ridge Academy. NPAs have a certification with the California Department of Education to work with school aged students and they are carefully selected by Blue Ridge Academy.

## May a family maintain the same special education NPA Providers/individual therapists, if they enroll in Blue Ridge Academy and year to year?

Each NPA oversees the scheduling and availability of their services providers. Our Special Education Department will confirm an NPA's certification with the California Department of Education, establish a contract with that NPA to start services.

Please note: The Special Education Department is happy to work with families, however we are not able to guarantee that they may maintain the same NPA providers/individual therapists.

## Should Special Education Teachers be included in the development of a student's education plan, designed by the Homeschool Teacher?

Whenever possible, it is recommended that a Special Education Teacher be included in the development of a student's education plan, which is designed by the learning coach and Homeschool Teacher. While it is not a requirement, the involvement of the Special Education Teacher provides an opportunity for the team to get a different perspective on how to help support a student's needs, challenges, and strengths.

## Shall your Homeschool Teacher collect work samples for students with an IEP?

Blue Ridge's Work Sample policy is the same for all students.

# Instructional Planning Amounts

## Program Description

At Blue Ridge Academy, we focus on Personalized Learning, a philosophy that truly puts every student first by supporting them in honoring and exploring their unique skills, special gifts, talents, and aspirations. In order to allow families flexibility on their personalized learning path, BR establishes a planning amount for students for educational items and services per full school year. Parents and students are not guaranteed to receive any educational items and services up to and equal to this planning amount, as a Homeschool Teacher and the Executive Director must approve all requests. The planning amount is also not a mandatory cap limiting the Charter School's ability to provide necessary educational services to students (e.g., pursuant to a student's individualized education program). Families utilize this planning amount to work with their teachers to carefully select educational products, such as curriculum, technology items, supplemental enrichment materials, field trip opportunities, and services, such as enrichment lessons and classes to fit their goals, learning plans, and subjects outlined in their Master Agreement. The Charter School developed this planning amount to help

ensure the school provides educational items and services aligned with its budget and to help ensure fair and equal treatment of students, to the extent consistent with individual needs. All orders must be secular and are approved by your Homeschool Teacher and/or our Enrichment Staff. Instructional Planning Amounts cannot be transferred between students.

> Product:
> - Academic Enrichment Materials
> - Curriculum
> - Technology Items*
> - Educational Field Trips
>
> Service:
> - Fine Art Lessons & Classes
> - Performing Art Lessons & Classes
> - Academic Enrichment Classes
> - Physical Education Classes
> - Tutoring Services
> - Driver's Education Courses
> - Cooking Classes
> - Gardening Classes
> - Reading and Writing Classes
> - STEM Classes

*The Technology Acceptable Use Acknowledgement must be signed in order to receive the technology equipment. All families receive this form through email at the beginning of the year.* All families will have access to the list of approved vendors/service providers and product/material items. This list is updated on a daily basis throughout the school year.

Instructional Planning Amounts are state funds and are not the property of the parent, nor is any material ordered through these planning amounts. All materials ordered through BR with state funding are the property of BR. Materials are loaned to enrolled students for educational purposes only. The items must be returned to the school at the commencement of the withdrawal process. All materials must be returned to BR within thirty days. Families may be billed for any items not returned and student transcripts may be held until all materials are returned.

## How to Request Services/Products

1. Visit the Blue Ridge Academy Procurify System to request any service or product.
2. The first time a family uses a vendor for service, they will need to sign and submit a waiver form.
3. If families are requesting a service, an Enrichment Certificate will be created and sent via email to the parent. Students are not able to start services without an Enrichment Certificate.
4. Families will present the Enrichment Certificate to the vendor.
5. Each vendor will invoice Blue Ridge Academy for the services listed on the certificate.
6. Families must place an order for services prior to the start of services. Back dated service orders will not be approved.
7. Blue Ridge Academy pays vendors directly. Parents should not pay vendors for Blue Ridge Academy

Student services as we cannot provide payment/reimbursement to families.

8. To request technology products offered exclusively by our Technology Department (i.e. most computers, laptops, tablets, and specific software), please visit the Tech Catalog on our Procurify system. This catalogue offers a curated list of current items which require configuration or standardization.

## How to Request New Vendors

- If a family would like to use a vendor that is not currently on the approved vendor list, a vendor application can be requested using this link: Vendor Application
- Product vendors do not need to be pre-approved.
- Our Vendor Team will contact the vendor.
- The vendor approval process is largely dependent on how quickly a vendor returns their application and supporting documents. The process could take a couple days to a couple of weeks. Our goal is to have the vendor approval process completed within two weeks.
- Vendors are often more willing to go through the steps to become an approved vendor if you, the family that is interested in their products or services, let them know that you are requesting their approval through Blue Ridge Academy. This way they will be aware when the application email arrives to them from us.

## Tech Catalogue

Choosing technology can be overwhelming. Our Tech Catalogue helps simplify your selection by providing a curated list of qualified devices, items, and software. All items offered meet internal standards of quality, performance, value, availability, and support. These items can be obtained with Instructional Planning Amounts.

Some technology items (e.g. computers, laptops, tablets and printers) require specific configurations, must meet certain standards or be purchased through select suppliers, channels, or agreements.

## Tech Costs

Most Tech Catalogue items are business-class devices and are not found in local retail stores, so be certain you are comparing the exact same models and specs. Remember, all taxes (ex. sales tax) and fees (ex. shipping, CA e-waste disposal) are also included in the price you see. Unfortunately, we are not able to price match.

Tech Catalogue pricing also includes software and device licenses, school compliance features, management services, enhanced warranties and damage protection, solid state drives (SSD), protective cases, asset tagging and inventory, packaging materials, shipping both ways, and lifetime support for the device is standard. These items are factored into the Instructional Fund cost of Tech Items.

The following limits have been placed for tech devices assigned to students and families:

## Work Samples

To meet California Independent Study Guidelines, Work Samples will be required and collected at the end of each Learning Period. Students are required to submit work samples as requested by their Homeschool Teacher to demonstrate and document student learning. Failure to provide work samples may jeopardize your child's enrollment status at Blue Ridge Academy.

Acceptable Work Sample Criteria:

- Original or scanned PDF version
- Demonstrates neat and organized work
- Demonstrates a good reflection of your child's learning and abilities
- Includes student's first/last name, subject, and date in the top right hand corner
- The sample needs to be completed and dated within the collection Learning Period
- Must be non-sectarian (non-religious)
- Photographs must include a summary from the student's perspective
- Samples may be typed or handwritten by the student. Younger students may dictate to the parent to write or type for them

Non-Compliant Work Samples Include:

- Scanned documents that are difficult to read or are very light
- A scanned or printed document of a certificate of completion or report from an online learning platform
- Samples completed and dated not within the Learning Period
- A photograph which does not include the student's summary of the project/concept
- Incomplete worksheets or work

# Exhibit B

# Sentences & Fragments

 Language Arts – Sept

Name

A **sentence** is a group of words that expresses a complete thought.

*Mrs. Carson grew vegetables in her garden.*

A **fragment** is a group of words that does not express a complete thought.

*Picked watermelons on Friday.
The tall cornstalks.*

Every sentence contains a subject and a predicate. The **subject** tells *who* or *what* the sentence is about. All the words in the subject part make up the **complete subject**.

The **predicate** tells what the subject *does* or *is*. All the words in the predicate part make up the **complete predicate**.

| complete subject | complete predicate |

*The busy farmer | planted ten rows of tomatoes.*

*God sends the rain to help plants grow.*

Ps. 147:8    Zech. 8:12

## Guided Practice

▶ Write *S* if the group of words is a sentence.
Write *F* if the group of words is a fragment.

S    1. The farmer prepares the soil before planting seeds.

F    2. Tills the ground to loosen the soil.

F    3. Usually plants the seeds in rows.

S    4. The seeds need water and sunlight.

F    5. The young seedlings in long rows.

▶ Underline the complete subject once and the complete predicate twice.

6. People grow many different plants in a vegetable garden.

7. Green beans grow on vines.

8. All potatoes grow under the ground.

9. Cornstalks are sometimes six feet tall.

10. Another word for *fruits* and *vegetables* is *produce*.



▶ Write a complete predicate to finish the sentence.

11. The produce in a grocery store is hethey for plants

▶ Write a complete subject to finish the sentence.

12. ___We___ buy vegetables at the Farmer's Market.

English 4 Chapter 1 Lesson 1

© 2004 BJU Press Reproduction prohibited.

1

# Exhibit C

MATH 5

* Please take your time and write neatly.

**Review**

**1.** Create a line graph by using the data in the chart below.

| Day of the Week | # of Children |
|---|---|
| Monday | 2 |
| Tuesday | 8 |
| Wednesday | 6 |
| Thursday | 12 |
| Friday | 14 |



Children at the Park

**2.** Circle the numbers that are divisible by 5.

320    247,035

875    2,635

60,236    402

**3.** Complete each problem.

$44 \times 10^4 = $ 440,000

$395 \times 10^3 = $ 395,000

$570,000 \div 10^3 = $ 570

**4.** Continue each sequence, and then write the rule.

800, 750, 700, 650, 600, 550, 500

rule: $-50$

36, 48, 60, 72, 84, 96, 108

rule: $+12$

**5.** Write the exponent form for each factored form. The first one is given as an example.

$3 \times 3 \times 3 \times 3 = $ $3^4$

$8 \times 8 \times 8 \times 8 \times 8 = $ $8^5$

$5 \times 5 \times 5 = $ $5^3$

$4 \times 4 = $ $4^2$

$12 \times 12 \times 12 \times 12 = $ $12^4$

$11 \times 11 \times 11 = $ $11^3$

**6.** Find each quotient.

$6)\overline{384}$

$9)\overline{144}$

$8)\overline{256}$

$7)\overline{}$

**7.** List all the prime numbers between 1 and 20 inside the piggy banks below.

2   3   5   7

11   13   17   19