Ethan P. Davis (SBN 294683)
 edavis@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone.:   +1 415 318 1228
Facsimile:    +1 415 318 1300

Alexander Kazam (Admitted *pro hac vice*)
 akazam@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone:   +1 202 626 2992

Nicole Bronnimann (Admitted *pro hac vice*)
 nbronnimann@kslaw.com
**KING & SPALDING LLP**
1100 Louisiana St., Suite 4100
Houston, TX 77002
Telephone:   +1 713 276 7402

David J. Hacker (SBN CA 249272)
 dhacker@firstliberty.org
Justin E. Butterfield (*pro hac vice*)
 jbutterfield@firstliberty.org
Lea E. Patterson (*pro hac vice*)
 lepatterson@firstliberty.org
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Pkwy., Suite 1600
Plano, Texas 75075
Telephone:   +1 972 941 4444
Facsimile:   +1 972 941 4457

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| JOHN and BREANNA WOOLARD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TONY THURMOND, *et al.*, <br><br> Defendants. | Case No. 2:23-CV-02305-JAM-JDP <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS MELISSA BASSANELLI, ZIMA CREASON, PAM COSTA, SAUL HERNANDEZ, BEN AVEY, PAULA VILLESCAZ, AND TANYA KRAVCHUK, MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** |

PLAINTIFFS' OPP TO SJUSD
DEFENDANTS' MOTION TO DISMISS

CASE NO. 2:23-CV-02305-JAM-JDP

King & Spalding LLP
Attorneys at Law
New York

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND LEGAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 5 |
| IV. | ARGUMENT | 6 |
| | A. The SJUSD Defendants Are Proper Defendants Because They Have Responsibility for Enforcing Visions' Compliance with Its Charter and Its Legal Obligations. | 6 |
| | B. The SJUSD Defendants' Qualified Immunity Arguments Are Inapplicable Because Plaintiffs Are Suing the State Officials In Their Official Capacities Only. | 8 |
| | C. Visions' Discriminatory Policies Violate the Free Exercise and Free Speech Clauses. | 9 |
| V. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 6

*Brown v. Woodland Joint Unified School District*,
  27 F.3d 1373 (9th Cir. 1994) ................................................................................................... 15

*California Parents for the Equalization of Educational Materials v. Torlakson*,
  973 F.3d 1010 (9th Cir. 2020) ........................................................................................... 11, 13

*Carson ex rel. O.C. v. Makin*,
  142 S. Ct. 1987, 1996 (2022) ................................................................................. 2, 12, 13, 15

*Central Reserve Life of North America Insurance Co. v. Struve*,
  852 F.2d 1158 (9th Cir. 1988) ................................................................................................. 11

*Community House, Inc. v. City of Boise, Idaho*,
  623 F.3d 945 (9th Cir. 2010) ................................................................................................... 10

*Espinoza v. Montana Department of Revenue*,
  140 S. Ct. 2246 (2020) ............................................................................................. 12, 13, 15, 16

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................................................ 10

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*,
  82 F.4th 664 (9th Cir. 2023) (en banc) ....................................................................... 12, 13, 14

*Groten v. California*,
  251 F.3d 844 (9th Cir. 2001) ..................................................................................................... 6

*Hartmann v. California Department of Corrections & Rehabilitation*,
  707 F.3d 1114 (9th Cir. 2013) ............................................................................................. 7, 10

*Jones v. Knipp,*
  No. 2:11-CV-1006, 2013 WL 6145245 (E.D. Cal. Nov. 21, 2013) .......................................... 16

*Kennedy v. Bremerton School District*,
  142 S. Ct. 2407 (2022) ....................................................................................................... 12, 14

*Krainski v. Nevada ex rel. Board of Regents of Nevada System of Higher Education*,
  616 F.3d 963 (9th Cir. 2010) ................................................................................................... 11

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ............................................................................................... 6

*Lee v. Weisman*,
    505 U.S. 577 (1992) ........................................................................................................... 14

*Locke v. Davey*,
    540 U.S. 712 (2004) ........................................................................................................... 15

*O'Brien v. Welty*,
    818 F.3d 920 (9th Cir. 2016) ............................................................................................... 6

*Rosenberger v. Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995) ............................................................................................................. 5

*Suarez v. Clark*,
    No. 1:22-cv-00160, 2023 WL 6393082 (E.D. Cal. Oct. 2, 2023) ..................................... 16

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ...................................................................................................... 5, 13

*Vahora v. Masood*,
    No. 1:16-CV-1624, 2017 WL 1213423 (E.D. Cal. Apr. 3, 2017) ...................................... 6

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ............................................................................................. 6

*Wilson v. State Board of Education*,
    75 Cal. App. 4th 1125 (1999) ........................................................................................ 8, 9

*Wright v. Beck*,
    981 F.3d 719 (9th Cir. 2020) ............................................................................................. 10

*Zelman v. Simmons-Harris*,
    536 U.S. 639, 654 (2002) .................................................................................................. 13

**Statutes**

42 U.S.C. § 1983 ................................................................................................................... 5, 13

California Education Code § 47600 ........................................................................................... 8

California Education Code § 47604.3 ..................................................................................... 4, 7

California Education Code § 47605 ........................................................................................ 3, 7

California Education Code § 47607 ........................................................................................ 4, 7

**Other Authorities**

Visions in Education Charter,
  R24-2 Exh. A .................................................................................................................. 2, 4, 7

**Rules**

Federal Rule of Civil Procedure 15(a)(2) ...................................................................................... 13

**Constitutional Provisions**

California Constitution Article IX, Section 8 ............................................................................ 3, 13

United States Constitution amend. I ................................................................................................ 5

United States Constitution art. VI, cl. 2 .................................................................................... 4, 13

United States Constitution, amend. XI ............................................................................................ 9

## I.     INTRODUCTION

The San Juan Unified School District ("SJUSD") Defendants[1] seek an early exit from this case, but their arguments miss the mark. Far from having nothing to do with this case, the SJUSD Superintendent and Board members have the power and the responsibility to ensure that Visions in Education complies with federal and state law. The SJUSD Defendants also invoke qualified immunity, but that defense has no relevance in this suit, which seeks prospective injunctive relief against public officials in their *official capacities only*. The SJUSD Defendants also claim that Plaintiffs have not alleged a substantial burden on their religious exercise, but recent Supreme Court precedent overwhelmingly establishes otherwise.

Plaintiff Carrie Dodson enrolled her son, C.D., in Visions in Education ("Visions"), a California charter school, when he was in the second grade. Visions is a tuition-free charter school in the San Juan Unified School District that offers an independent study program called "Home School Academy." Under that program, parents can access public funds to purchase the curricula of their choice and then homeschool their children, with limited oversight by Visions employees. Carrie Dodson is a Christian mother who believes that educating her child in her religious worldview is of paramount importance both to the exercise of her faith and to the development of her son into an informed and well-rounded member of society. Carrie therefore chose an academically rigorous faith-based curriculum from which to instruct her son for his fifth-grade year. But Visions rejected her choice of curriculum solely because of its religious viewpoint and refused to credit C.D.'s work derived from the curriculum. In January 2023, Visions expelled C.D. for "incomplete" assignments, acknowledging that these assignments were deemed incomplete only because the school refused to consider assignments derived from faith-based curricula.

The SJUSD Defendants make three arguments in their motion to dismiss. First, they try to convince this Court that they are powerless to control Visions' policies and decisions with respect to the Dodsons. But Visions is far from an independent actor free from Board control. Under

---

[1] Defendant Melissa Bassanelli is the Superintendent of San Juan Unified School District, and Defendants Zima Creason, Pam Costa, Saul Hernandez, Ben Avey, Paula Villescaz, and Tanya Kravchuk are members of the SJUSD Board.

PLAINTIFFS' OPP TO SJUSD
DEFENDANTS' MOTION TO DISMISS                - 1 -                CASE NO. 2:23-CV-02305-JAM-JDP

California law, the SJUSD Defendants have many oversight responsibilities and the ultimate chartering authority over Visions. Indeed, the SJUSD Defendants have the power to revoke Visions' charter if they determine that the school has violated either federal or state law. Second, Defendants argue that they are immune from Plaintiffs' claims on the basis of qualified immunity. The doctrine of qualified immunity is wholly inapplicable, however, because the SJUSD Defendants were sued solely in their official capacities. Third, Defendants contend that Visions' policies, as described in Plaintiffs' complaint, do not infringe on religious practice. (Defendants do not address Plaintiffs' free speech claims.). This stance contradicts fundamental Free Exercise Clause principles. The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits"—as Visions has done. *Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987, 1996 (2022) (collecting cases). This Court should deny the SJUSD Defendants' motion to dismiss.

## II.     FACTUAL AND LEGAL BACKGROUND

Carrie Dodson is a devout Christian who seeks to raise her son in their shared faith. Compl. ¶ 63. Providing an education for her son that reflects their faith is of the highest importance to her. *Id*. ¶¶ 4, 63. Visions offers a model of individualized education that, were it not for Visions' exclusion of religious viewpoints, would be ideally suited to Carrie and her son. Visions is a tuition-free charter school that offers an "independent study" program that families may elect to use for their children as an alternative to traditional classroom-based instruction. *Id*. ¶¶ 34, 35. Visions says that this "Home School Academy" program is one of "parental choice with [Visions'] support" and that its mission is to "empower students to take ownership and responsibility for their present and future learning." *Id*. ¶ 41; R24-2 Exh. A p. 22. Under the Home School Academy program, parents receive state funds to use as they deem appropriate to purchase materials to homeschool their children. Compl. ¶ 42. Visions lets parents choose the curricula. *Id*. ¶¶ 42–43.

For C.D.'s 2022–2023 school year, Carrie found an academically rigorous curriculum that aligned with her Christian faith called *The Good and Beautiful*. *Id*. ¶ 64–66. This curriculum covers subjects such as math, history, science, and language arts, and emphasizes "family, God, high character, nature, and wholesome literature." *Id*. ¶ 65. C.D. submitted assignments derived from

the faith-based curriculum, such as a math worksheet testing multiplication and division. *Id*. ¶ 69.

But Carrie's choice exposed a glaring exception to Visions' model of inclusive, parent-guided learning. *Id*. ¶ 6. While the program provides funds without restrictions for parents to choose a wide range of curricula and other educational products, Visions forbids parents from using the instructional funds to purchase products that are "faith-based," even if they are part of an overall curriculum that fully satisfies California state educational standards. *Id*. ¶¶ 6, 66. Furthermore, Visions will refuse to "approve or consider work from [a] faith[-]based curriculum" "for instruction or attendance." *Id*. ¶¶ 67, 68. Visions rejected Carrie's choice of curriculum for the 2022–2023 school year for the sole reason that Visions would not accept assignments derived from a faith-based curriculum. *Id*. ¶ 70. Visions has refused to allow Carrie to use this faith-based curriculum even if she agrees to supplement it with curricula that ensure that her overall homeschooling approach meets all California state standards, as she has done in the past. *Id*. ¶ 66. Moreover, even if parents could afford to purchase a faith-based curriculum on their own, they would be prevented from using it because Visions rejects all work samples that derive from "sectarian or religious" curricula. *Id*. ¶ 70. Work samples from religious curricula are deemed categorically unacceptable, no matter how well they reflect the student's learning and abilities or align with California standards. *Id*. ¶¶ 68–70. And C.D.'s completed assignments from faith-based curricula were automatically marked "incomplete." *Id*. ¶ 73.

When Carrie objected to this denial of equal treatment for faith-based education, Visions' school officials cited California laws that prohibit the teaching of "sectarian or denominational doctrine" in California public schools, Cal. Const. art. IX, § 8, and require charter schools to be "nonsectarian" in their programming, Cal. Educ. Code § 47605(e)(1). Compl. ¶ 70.

In January of this year, Visions decided to expel C.D. for submitting what Visions called "incomplete" assignments. Compl. ¶ 73. Visions has acknowledged that the only reason that the completed assignments were deemed "incomplete" is that they came from a faith-based curriculum. *Id*. ¶ 73. Carrie appealed Visions' decision to expel C.D., but Visions' appeals panel again refused to permit the Dodsons to use a religious curriculum of their choice. *Id*. ¶ 73. As a result, C.D. was involuntarily withdrawn from Visions on February 24, 2023. *Id*. ¶ 74.

In short, Visions has made clear that if parents want to homeschool their children with a faith-based curriculum, they cannot participate in the Home School Academy, no matter how well the curriculum meets the student's individual learning needs and preferences. *Id.* ¶ 75. Faith-based education is not only singled out for a substantial financial penalty; it is excluded altogether from the wide range of permissible curricula. *Id.* ¶ 75. This was further confirmed at a Visions board meeting on February 24, 2022, when a concerned parent complained about "religious item exemptions" in the curriculum budget. *Id.* ¶ 76. Visions' Superintendent, Steve Olmos, responded by "remind[ing] the public that Visions is a public school funded by public dollars and using religious curriculum would be a violation of [Visions'] charter." *Id.* ¶ 76.

The SJUSD Defendants oversee that charter and have numerous means of control over Visions' policies. A chartering authority can demand that a charter school respond to its inquiries, Cal. Educ. Code § 47604.3, "inspect or observe any part of the charter school at any time," *id.* § 47607(a)(5), and demand that the charter school cure any violations of law or of charter obligations the chartering authority identifies, *id.* § 47607(g), (h). In addition to these statutory powers, Visions' charter requires annual performance reviews and reports to the secretary of the SJUSD Board "to evaluate the academic program … and ensure compliance with applicable State and Federal regulations, as well as with the provisions of this charter." *See* R24-2 Exh. A p. 137. Finally, the SJUSD Defendants have ultimate authority over Visions because a chartering authority like the SJUSD Board may revoke a charter if it determines that the charter school "[c]ommitted a material violation of any of the conditions … set forth in [its] charter" or "[v]iolated any law." Cal. Educ. Code § 47607(f)(1), (4). That the SJUSD Defendants may not personally make the curricular or grading decisions that violate federal law is irrelevant. Because of their oversight powers and ultimate chartering authority, the SJUSD Defendants exert sufficient control and authority over Visions to compel the school's decisionmakers to comply with any law, including the United States Constitution—"the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

Plaintiffs, including Carrie Dodson and her son, brought this suit to vindicate their federal constitutional rights. Defendants' application of state law to exclude faith-based homeschooling from an otherwise generally available public benefit for homeschooling violates well-established

principles prohibiting discrimination against religious viewpoints under the Free Exercise and Free Speech Clauses of the First Amendment. U.S. Const. amend. I. Discrimination on the basis of religion "is odious to our Constitution" and "cannot stand." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017). The Free Exercise Clause protects against laws that "discriminate against some or all religious beliefs," "regulate or outlaw conduct because it is religiously motivated," or "impose special disabilities" on religion. *Id.* at 461 (internal quotation marks and brackets omitted). Likewise, "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Plaintiffs bring claims under the First Amendment's Free Exercise Clause to challenge Visions' refusal to disburse instructional funds for religious curricula and refusal to accept faith-based work samples. Compl. ¶¶ 91–114. Plaintiffs bring additional claims under the First Amendment's Free Speech Clause (which the SJUSD Defendants do not address) challenging the same conduct on free-speech grounds. *Id.* ¶¶ 115–137. State law cannot be used to deprive citizens of the fundamental rights secured to every American by the federal Constitution. *See* 42 U.S.C. § 1983. The SJUSD Defendants are proper defendants here because they have authority to ensure that Visions does not continue to violate those constitutional rights.

### III.   LEGAL STANDARD

"In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor." *Vahora v. Masood*, No. 1:16-CV-1624, 2017 WL 1213423, at *5 (E.D. Cal. Apr. 3, 2017) (citing *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). "A complaint need not state 'detailed factual allegations,' but must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When "defendants assert qualified immunity in

a motion to dismiss … 'dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

## IV.   ARGUMENT

### A. The SJUSD Defendants Are Proper Defendants Because They Have Responsibility for Enforcing Visions' Compliance with Its Charter and Its Legal Obligations.

The SJUSD Defendants' principal argument for dismissal is that they lack a sufficient connection to this case to be proper defendants. MTD 11–16. But the SJUSD Defendants dramatically understate the power they have over Visions. Both California law and Visions' charter petition make abundantly clear that the SJUSD Defendants have the power and the responsibility for ensuring Visions' compliance with federal and state law, including constitutional requirements. *See* Compl. ¶ 22. To the extent that Visions' application of California law violates the Plaintiffs' rights, *see, e.g.*, *id*. ¶¶ 82–83, the SJUSD Defendants share responsibility for those violations. And to the extent that the United States Constitution requires the defendants in this suit to accede to Plaintiffs' requested relief, the SJUSD Defendants' obligation to obey and enforce the supreme law of the land makes the SJUSD Defendants a part of the solution. The fact that the Superintendent and the Board members may not have personally participated in Visions' decisions with respect to the Dodsons does not matter, because "[a] plaintiff seeking injunctive relief against the [government] is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation" and name the official "who can appropriately respond to injunctive relief." *Id.* Because the SJUSD Defendants in their official capacities can "appropriately respond" to Plaintiffs' requested "injunctive relief," *id.*, they are proper defendants in this suit.

California law makes a chartering authority responsible for supervising a charter school's legal compliance and gives the chartering authority a variety of enforcement tools. A prospective charter school, or a charter school seeking renewal, must affirm in its petition its compliance with

a number of requirements. Cal. Educ. Code § 47605(e)(1)-(2). If a charter school's petition or petition for renewal do not contain those affirmations, then the chartering authority may deny the petition. *Id.* §§ 47605(c)(4), 47607(b). Visions' current charter (which, Plaintiffs agree, is subject to judicial notice) contains these affirmations as well as an assertion that it will follow all applicable laws and regulations. *See* R24-2 Exh. A p. 5. Importantly, a chartering authority like the SJUSD board may revoke a charter if it determines that the charter school "[c]ommitted a material violation of any of the conditions … set forth in [its] charter" or "[v]iolated any law." Cal. Educ. Code § 47607(f)(1), (4). If the SJUSD Defendants determined that Visions violated the conditions of its charter or violated any law by complying or not complying with Plaintiffs' demands, then they could revoke or refuse to renew the charter.

In addition to wielding power through the petition process, a chartering authority can demand that a charter school respond to its inquiries, Cal. Educ. Code § 47604.3, "inspect or observe any part of the charter school at any time," *id.* § 47607(a)(5), and demand that the school cure any identified violations, *id.* § 47607(g), (h). Visions' charter provides the SJUSD Defendants yet another means of oversight: the charter requires annual performance reviews and reports to the secretary of the SJUSD Board of Education "to evaluate the academic program … and to ensure compliance with applicable State and Federal regulations, as well as with the provisions of this charter." *See* R24-2 Exh. A, p. 137.[2] These provisions disprove the SJUSD Defendants' central claim that they have no power to cure the constitutional violations at issue in this case.

The SJUSD Defendants try to pretend that they have nothing to do with this case by disclaiming responsibility for Visions' policies. *See* MTD 11–16. But the authorities they cite actually make clear that they are proper defendants here. For example, the defendants rely on *Wilson v. State Board of Education*, 75 Cal. App. 4th 1125 (1999), to contend that a chartering

---

[2] The SJUSD Defendants attempt to distance themselves from Visions by protesting that Visions is "also" a "local educational agency" under California law. MTD 7 n.1. But irrespective of the degree to which Visions shares responsibility for correcting its violations of the law, it is clear as a matter of law that the SJUSD Defendants, as the chartering authority, have substantial oversight and control over Visions' compliance with the law. *See Wilson v. State Bd. of Educ.*, 75 Cal. App. 4th 1125, 1141 (1999); Cal. Educ. Code §§ 47607(a)(5), 47607(f)(1), 47607(f)(4), 47607(g), 47607(h). The SJUSD Defendants do not grapple with all of the relevant provisions in Visions' charter and California law. And even if those provisions left any material ambiguity about the SJUSD Defendants' authority (they do not), that would be a matter for discovery, not a motion to dismiss.

authority has only a "[l]imited [r]ole," MTD 11. In *Wilson*, two taxpayers challenged the Charter Schools Act of 1992, Cal. Educ. Code § 47600 *et seq.*, as facially invalid. 75 Cal. App. 4th at 1129–30 & n.4. The plaintiffs argued that the concept of a charter schools violates the California constitution because charter schools were too independent of the public school system and its officers. *Id.* at 1138. The Court of Appeal upheld the Charter Schools Act as constitutional because a wide range of statutory provisions made clear that the charter schools were subject to public control. *Id.* at 1140, 1147. The Court reasoned that "the very destiny of charter schools lies solely in the hands of public agencies and offices," including "school districts," which, as "chartering authorities[,] have continuing oversight and monitoring powers." *Id.* at 1139–40. The Court also explained that the plaintiffs need not fear that control is lacking over charter schools' "decisions about curriculum and similar educational functions" because "through their powers to deny petitions and revoke charters, *chartering authorities do exercise control over these educational functions*." *Id.* at 1140–41 (emphasis added). *Contra* MTD 12 ("The Education Code does not impose any responsibility for curriculum or grading as the chartering authority."). That Visions operates as a nonprofit public benefit corporation, *see* MTD 11 n.2, does not alter the scope of the SJUSD Defendants' control over it, for "even a school operated by a nonprofit could never stray from under the wings of the chartering authority, the [State] Board [of Education], and the Superintendent [of Public Instruction]." *Wilson*, 75 Cal. App. 4th at 1140.

In sum, chartering authorities like SJUSD police the practices of charter schools like Visions. Whether or not the SJUSD Defendants were personally involved in designing Visions' policies is irrelevant because the SJUSD Defendants have at their disposal various means, formal and informal, of requiring Visions to comply with California and federal law. Given that authority, the SJUSD Defendants are clearly positioned to "appropriately respond" to Plaintiffs' requested injunctive relief. *See Hartmann*, 707 F.3d at 1127.

### B. The SJUSD Defendants' Qualified Immunity Arguments Are Inapplicable Because Plaintiffs Are Suing the State Officials in Their Official Capacities Only.

The SJUSD Defendants argue that the SJUSD officials are shielded from suit on the basis of qualified immunity. The defendants misunderstand qualified immunity, which is a defense

whereby defendants sued *in their individual capacity for damages* are immune if their conduct was not unconstitutional under clearly established law. *See, e.g.*, *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 964 (9th Cir. 2010). But that argument has nothing to do with this case, where Plaintiffs plead claims against the SJUSD Defendants in their *official capacities* only and seek *prospective injunctive relief*. Compl. ¶¶ 22–23, 85–90. "Qualified immunity is … 'available only to government officials sued in their individual capacities' and is '*not* available to those sued only in their official capacities.'" *Wright v. Beck*, 981 F.3d 719, 737 (9th Cir. 2020) (reversing district court for granting qualified immunity to defendants sued only in their official capacity) (quoting *Cmty. House*, 623 F.3d at 965). This is an *Ex parte Young*, 209 U.S. 123 (1908) suit for injunctive relief to require state and local officials to comply with federal law. Therefore, the SJUSD Defendants' arguments as to whether it is clearly established that the Constitution precludes religious discrimination are simply inapposite.[3]

### C. **Visions' Discriminatory Policies Violate the Free Exercise and Free Speech Clauses.**

The SJUSD Defendants contend that, even if they are proper defendants in this lawsuit, Plaintiffs "cannot allege a plausible Free Exercise claim because they cannot establish a substantial burden on either a religious practice or exercise." MTD 16. The SJUSD Defendants claim that Plaintiffs have not alleged any "specific religious conduct affected" by Visions' policies. *Id.* at 16 (citing *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1016–17 (9th Cir. 2020)). This cursory argument completely ignores the allegations in the complaint. Plaintiffs allege that their "sincerely held religious beliefs motivate [them] to provide [their] child[ren] with a faith-based education." Compl. ¶ 63. Visions, however, has excluded faith-based curricula from generally available public funding and has refused to accept work samples from faith-based curricula. *See Id.* ¶ 75. Plaintiffs allege that these discriminatory policies have imposed a direct and substantial burden on Plaintiffs' religiously motivated practice of educating their

---

[3] The SJUSD Defendants do not argue that Plaintiffs' claims against them in their official capacities are barred by the Eleventh Amendment. And in any event, such an argument would be meritless. No Eleventh Amendment immunity for state officials sued in their official capacity exists where, as here, "'the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights.'" *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967–68 (9th Cir. 2010) (emphasis omitted) (quoting *Cent. Reserve Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988)). Plaintiffs seek prospective injunctive relief to prevent Defendants from violating their constitutional rights. *See* Compl. at 30.

children in accordance with their faith. *See Id.* ¶¶ 63–76, 91–114. For example, Plaintiffs allege that under Visions' policies, "[f]aith-based education is singled out for a substantial financial penalty" because of Visions' refusal to provide equal access to public funds, which amount to "thousands of dollars each year," for the purchase of faith-based instructional materials. *Id.* ¶¶ 42, 99. And Plaintiffs allege that C.D. was expelled from Visions for using a faith-based curriculum. *Id.* ¶¶ 18, 73–75, 86. The SJUSD Defendants do not even acknowledge these allegations, let alone explain why they are insufficient to state a claim.

Under Supreme Court and Ninth Circuit precedent, it is well-established that discrimination against religion violates the Free Exercise Clause. "Under the First Amendment's protection of free exercise of religion and free speech, the government may not 'single out' religious groups 'for special disfavor.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 671–72 (9th Cir. 2023) (en banc) (quoting *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2416 (2022)). The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987, 1996 (2022) (collecting cases). For example, in *Espinoza v. Montana Department of Revenue,* the Court recently held that a provision of the Montana Constitution restricting aid to religion could not be applied to invalidate a state program that provided scholarships to students who attend private schools, including some faith-based schools. 140 S. Ct. 2246, 2262–63 (2020). Similarly, in *Carson*, the Court held that Maine violated the Free Exercise Clause when it excluded religious education from a tuition assistance program for parents sending their children to private schools. 142 S. Ct. at 1996. Because Visions functions as a program that subsidizes parents' independent choices about how to educate their children, it is materially indistinguishable from the publicly funded parental choice programs in *Carson* and *Espinoza*. When Visions "pays [instructional funds] for certain students at [home] schools—so long as the [home] schools are not religious," that is "discrimination against religion." *Id.* at 1998.

Imposing "special disabilities on the basis of religious views or religious status" triggers strict scrutiny. *Trinity Lutheran Church of Columbia*, *Inc. v. Comer*, 582 U.S. 449, 458–61 (2017). Under strict scrutiny, "[defendants] must demonstrate" that a policy singling out religious practice

for special burdens "advance[s] interests of the highest order" and is "narrowly tailored in pursuit of those interests." *Fellowship*, 82 F.4th at 685; *see also id* at 695 ("To pass strict scrutiny, the District's policies must be 'narrowly tailored' to advance 'a compelling governmental interest.'"). The SJUSD Defendants do not even mention the strict scrutiny test, let alone demonstrate that Visions' policies survive strict scrutiny. And while the SJUSD Defendants briefly allude to an interest in avoiding violations of the Establishment Clause, it is well-settled that a publicly funded education program of "true private choice," like Visions' Home School Academy, does not offend the Establishment Clause. *Zelman v. Simmons-Harris*, 536 U.S. 639, 654 (2002); *see also Carson*, 142 S. Ct. at 1997 ("[A] neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause."). Moreover, a state's purported "interest in separating church and State 'more fiercely' than the Federal Constitution … cannot qualify as compelling'" when it entails discrimination against religion. *Espinoza*, 140 S. Ct. at 2260.

The SJUSD Defendants do not meaningfully address any of this binding precedent. And none of the cases they cite supports their position. In *California Parents*, which addressed a free-exercise challenge by Hindu parents who objected to certain portrayals of Hinduism in traditional public school curricula, the Ninth Circuit specifically distinguished cases involving public benefit programs like *Espinoza* and *Trinity Lutheran*. 973 F.3d at 1019. The court explained: "We are not dealing with a state program that provides financial or other similar benefits. The state has not carved out any exclusion for religious education in the curriculum materials. Appellants allege no penalty or coerced conduct." *Id.* Here, just the opposite is true in every way: we *are* dealing with a program that provides financial benefits (among other benefits), Visions *has* carved out an exclusion for faith-based education from the range of curriculum options available to parents, and Plaintiffs allege that they have suffered a substantial financial penalty.

The SJUSD Defendants also briefly quote the Supreme Court's statement in *Lee v. Weisman* that "religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State." MTD 16 (quoting *Lee v. Weisman*, 505 U.S. 577, 589 (1992)). But that quotation actually supports *Plaintiffs'* position; Visions' policies impermissibly "proscribe[ ]" (*i.e.*, prohibit)

Plaintiffs' "precious" religious expression and religious exercise. *Id.* And Plaintiffs' position does not require "the State" to "prescribe[ ]" religion. *Id.* Plaintiffs merely wish to select faith-based instructional materials for use by their own families in their own homes; they do not seek to enlist the government in proselytizing to others.

As for *Kennedy v. Bremerton School District*, the SJUSD Defendants neglected to note that their citation actually refers to a portion of Justice Sotomayor's *dissent* in that case—not the majority opinion. *See* MTD 16 (citing *Kennedy*, 142 S. Ct. at 2441). As the Ninth Circuit has recognized, the majority opinion in *Kennedy* reaffirmed the principle that the government cannot "'single out'" religion "'for special disfavor.'" *Fellowship*, 82 F.4th at 671–72 (quoting *Kennedy*, 142 S. Ct. at 2416). Indeed, *Kennedy* specifically rejected a school district's argument that censorship of private religious expression was "essential to avoid a violation of the Establishment Clause." *Kennedy*, 142 S. Ct. at 2426. On the contrary, the Court held, "[b]oth the Free Exercise and Free Speech Clauses of the First Amendment" protect such expression. *Id.* at 2416. As the Court explained, "[t]he Constitution and the best of our traditions counsel mutual respect and tolerance, not censorship and suppression, for religious and nonreligious views alike." *Id.* That the SJUSD Defendants have been reduced to citing a *dissent* (without noting the fact) from the Supreme Court's recent free-exercise precedents underscores that their position is diametrically opposed to controlling law.

In the section of their motion on qualified immunity, the SJUSD Defendants also cite *Locke v. Davey*, 540 U.S. 712 (2004), and *Brown v. Woodland Joint Unified School District*, 27 F.3d 1373 (9th Cir. 1994). Both cases are inapposite and predate *Carson* and *Espinoza*. As the Supreme Court explained in *Carson* and *Espinoza*, *Locke* stands only for the narrow proposition that a state may exclude from a public funding program the use of taxpayer funds to "pursu[e] a degree designed to train[ ] a minister to lead a congregation." *Carson*, 142 S. Ct. at 2002 (cleaned up); *accord Espinoza*, 140 S. Ct. at 2257. Notably, the funds in *Locke* "could be and were used for theology courses; only pursuing a 'vocational religious' degree was excluded." *Carson*, 142 S. Ct. at 2002. "*Locke* cannot be read beyond its narrow focus on vocational religious degrees to generally authorize the State to exclude religious persons from the enjoyment of public benefits on the basis

of their anticipated religious use of the benefits." *Id.* As in *Carson* and *Espinoza*, then, "*Locke* can be of no help to [Defendants] here." *Id.* And the Ninth Circuit's decision in *Brown* is even farther afield. *Brown* involved an Establishment Clause challenge to a public school curriculum that asked children to discuss witches or create poetic chants and pretend they were witches. *See* 27 F.3d at 1376–77. As a matter of federal constitutional law, the court held only that the curriculum did not violate the Establishment Clause because it did not require children to practice the "religion" of witchcraft. *Id.* at 1376–77; *see id.* at 1384 (concluding that "the School District has not violated the federal Establishment Clause"). Contrary to the SJUSD Defendants' claim, *see* MTD 18, the Ninth Circuit did not address the constitutionality of Article IX, Section 8 of the California Constitution, let alone uphold its application to the facts of this case. Nor can the SJUSD Defendants or any other defendants defend their actions by claiming that they are merely following state law; as in *Espinoza*, under the Supremacy Clause, state law must always give way to federal constitutional rights. *See Espinoza*, 140 S. Ct. at 2262; U.S. Const. art. VI, cl. 2; 42 U.S.C. § 1983.[4]

## V.   CONCLUSION

The Court should deny the SJUSD Defendants' motion to dismiss. In the alternative, the Plaintiffs request that the Court grant leave to amend in the interest of justice. *See* Fed. R. Civ. P. 15(a)(2).

Dated:  November 20, 2023                         Respectfully submitted,

**KING & SPALDING LLP**

*/s/ Ethan P. Davis*
    ETHAN P. DAVIS

*Counsel for Plaintiffs*

---

[4] Because the SJUSD Defendants' motion to dismiss does not raise any defense to Plaintiffs' claims under the Free Speech Clause, *see* Compl. ¶¶ 115–137, they have forfeited any argument that those claims should be dismissed. *See Jones v. Knipp,* No. 2:11-CV-1006, 2013 WL 6145245, at *2 (E.D. Cal. Nov. 21, 2013). And the SJUSD Defendants cannot raise an argument regarding the free-speech claims for the first time in a reply brief. *See Suarez v. Clark*, No. 1:22-cv-00160, 2023 WL 6393082, at *2 (E.D. Cal. Oct. 2, 2023) (collecting cases).

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2023, I caused a true and correct copy of the foregoing response to the SJUSD Defendants' Motion to Dismiss, to be filed with the Court electronically and served by the Court's CM/ECF system upon listed counsel for Defendants.

/s/ Ethan P. Davis